IN WILKES SUPERIOR COURT, JULY TERM, 1832.

BENJAMIN SLACK *vs.* JOHN S. MOSS.

### *Debt.*

WILKES,
July, 1832.

SLACK
*v.*
Moss.

THE notes on which this action is founded, appear by the evidence to have been given in consideration of notes to a much larger amount which had been won at gaming, from the present defendant. The note upon which the question arose was for $25; defendant contended that in contemplation of law it was a note given for gaming. The answer set forth the gaming act, and relied upon it for defence. Plaintiff's counsel contended that a note given in consideration to forbear suing (which was the case here) was a note given upon legal consideration. That in this case plaintiff had notes to a large amount and had *prima facie* a good cause of action, and the notes given in lieu of them were for a much less sum, and a longer term of payment.

*The court refused to decide that a note given in consideration of forbearance to sue, is void, for want of consideration; but when the cause of action forborne, is clearly illegal and void, a note given in consideration of forbearance is tainted with the nature of that cause of action.*

The question here presented, so far as the court recollects, is a new one. It is admitted that the notes sued upon were given in consideration of other notes won at gaming, or given for a gaming consideration. The court cannot decide generally that a note given in consideration of forbearance to sue, is void, for want of consideration; but when the cause of action forborne to be sued, is clearly illegal and void, as in the present case, the court is inclined to the opinion, that the notes given in lieu and in consideration of the gaming notes, or even as a compromise for them, or for forbearance to sue upon them, are contaminated with the illegal consideration upon which the original notes were given. If they were not so adjudged, the statute of gaming would be frequently, if not always evaded, because a note given in consideration of such notes might be frequently obtained, by making some deduction in the amount, and extending the time of payment.

*The payee of a promissory note is a competent witness to prove its consideration under some circumstances.*

In the course of the trial, the payee of the first notes was called as a witness, to prove the consideration, upon which those notes were given. His competency was objected to on the authority of Walton and Shelly, 1 Durn. and East, 296. and some decisions at Nisi Prius, and a recent decision said to have been made in the middle Circuit, in which the principle adjudged in Walton and Shelly was recognized to be law in this State. The case of Walton and Shelly is the first case in the British law books in which the principle attempted to be established in that case, is to be found. That case was decided in the year 1786, two years in point of date after the act of the legislature of this State and more than ten years after the date of the 14th May, 1776, which was adopted by that act as the period by which to determine what British

21

Statutes, and what part of the common law should be in force in this State. If the principle settled in Walton and Shelly was not law in England on the 14th day of May, 1776, *a fortiori* it was not law in Georgia on that day, and the adopting statute recognizes neither British common or statute law which was not in force in the Province of Georgia on that day. But independent of this view of the question, there is abundant reason for rejecting the authority of Walton and Shelly in the courts of this State. That case is not authority in the Courts of Great Britain at this day. The case of Jordan *v.* Laishbrooke, 7 Durn. & East, 601. decided in 1798 *in the same court that decided the case of* Walton and Shelly, overturned the authority of that case, expressly, by three judges against one. The case of Walton and Shelly is remarkable for the circumstances attending it. The counsel for the plaintiff rely almost entirely upon cases *recently* decided, and which appear not to have been reported. The only reported case referred to is in Viner's Abridgment, an authority which the presiding Judge has never seen. The counsel laid down as an incontestible principle of law, that no person whose name is upon a negotiable instrument, is a competent witness, to impeach its validity. The Judges, in their opinions, assume the same principle as settled law, and what is still more surprising, the adverse counsel acquiesce in this assumption of court and counsel, but endeavor to draw a distinction to prevent its application. They contended that the principle had been confined to instruments which were the immediate cause of action, which would have rendered it inapplicable in that case. In that case the instrument, the foundation of the action, had been given in consideration of two notes. The defendant called one of the indorsers of those notes to the plaintiff, to prove that the notes were given for usurious consideration and the witness was repelled on the ground, that having indorsed it, and put it in circulation he was an incompetent witness to impeach its validity. We have seen that this was in 1786. Twelve years afterwards, in 1798, the case of Jordan and Laishbrooke was decided in the same court, when the principle decided in Walton and Shelly was overturned and declared not to be law. It was declared in that case, that no case had been decided in the courts of Westminster Hall, before the case of Walton and Shelly, in which the principle decided in that case had been recognized as law. The cases referred to in Walton and Shelly must therefore have been decisions at Nisi Prius. It may be properly asserted that the principle decided in that case is not supported by a single elementary writer on the law of evidence, of established reputation. But it may be said that the case of Walton and Shelly was decided in the time of Lord Mansfield, and principally through his influence, and the case of Jordan and Laishbrooke in the time of Lord Chief Justice Kenyon, and that Lord Mansfield's de-

cisions are entitled to more respect than those of Lord Kenyon. As a general rule this is willingly admitted. But in the two cases which are here the subject of investigation, we have only to consider the reasons upon which the two cases were decided. Fortunately, the reasons for both decisions are presented to the inquirer after judicial truth. We are not reduced to the necessity of deciding according to the authority of the presiding judges in either case. The commercial law of England is greatly indebted to the distinguished Lord Mansfield. Like other innovators he suffered his powerful mind to slide into error upon what appears to have been a favorite subject with him, the law merchant, which before his time was in a chaotic state. He appears to have been a decided friend of the commercial interest of his country, and in order to place it upon what he deemed solid ground, he departed from the established principles of evidence. Before the decision of the case of Walton and Shelly the general rule was settled that all persons were competent to be heard as witnesses who were not interested, or were not infamous. Courts of law in England for the last hundred years, have very uniformly relaxed the rules of evidence established in more remote times ; and no Judge has contributed more to this relaxation than Lord Mansfield ; yet in the case of Walton and Shelly, in violation of his general train of decisions, he retrograded, and excluded a witness on the ground of incompetency, who would have been admitted one or even two hundred years before, for in the case of Walton and Shelly, the witness was called upon to testify against his interest, if he had any. It is understood that the states of New York, Massachusetts and Pennsylvania have adopted the principle decided in Walton and Shelly. And even in South Carolina the same principle has been adopted. In the case of Craig *v.* Newton, (1 Const. Repts. page      ) the majority of the court rejected the evidence of the maker in a case between an indorsee and indorser, on the ground that he was interested because he was liable to the cost. But two of the three judges which formed the majority of the court, appear to place great reliance upon the case of Walton and Shelly. Judges Cheves and Nott dissented, holding the maker to be a competent witness. Judge Colcock, before whom the case was tried, is by the reporter made to declare, that he considers there is no difference between indorsing a note knowing that it may be invalidated by his evidence, and *forging.* This opinion is given in the course of an argument to sustain the case of Walton and Shelly against that of Jordan and Laishbrooke. The extravagance of this opinion is only equalled by its folly. By indorsing a note the payee knew that he rendered himself liable to pay it, if the drawer did not. By giving evidence to exonerate the drawer from the payment of it, he imposed upon himself the obligation to pay it. Yet this act is held to be

as atrocious as *forgery.* The decisions of the state courts are not authority in the courts of this State, for two reasons. First, because the adoption by the states of the British Statute and common law, is as variant, as the varied interests of the several States in local matters. And secondly, because the degrees in which the British Statutes and common law have been changed by state legislation is also as various as there local interests. Those decisions are of use in this State only so far as their reasons are sound, and applicable to our statutes and the existing state of things here. The case of Walton and Shelly was decided to subserve the commercial interests of England, at the expense of all the other interests of that nation. For that reason it has been overruled even there. The state of New York is one of the most commercial states in the union. It is therefore not surprising that the principle decided in Walton and Shelly should have been adopted in that state before it was reversed in England. The cities of Boston and Philadelphia are commercial cities, and probably the Judges of those states have been principally taken from those cities. If so, that may account for the adoption of Walton and Shelly by their courts. But if Judge Cheves has given a correct history of the decisions of New York upon that subject, (and there can be no doubt that he has) they have been laboring ever since the adoption of it, to evade its force. If the courts in South Carolina have adopted the principle of that case, they will in all probability adopt the same measures to get rid of it, which Judge Cheves charges upon the courts of New York. If the principle of Walton and Shelly has not been adopted in the case of Craig *v.* Newton, the decision in that case is at least as indefensible. In Craig *v.* Newton, the action was by the indorsee against the indorser. The drawer or maker was called as a witness to prove notice to the indorser. A verdict had been previously rendered against him on the same instrument. He was repelled on the ground of interest, because it was said by one Judge he was liable for the costs of the action ; the other two Judges appearing to rely principally on Walton and Shelly. If he was liable to the costs of that action, it must have been in an action between the then plaintiff and him on the note. He certainly could not be held to pay the cost of the suit between the indorsee and indorser by any process issuing in that case. If the plaintiff had been cast in his suit, he would have had the right to sue the maker and recover of him the cost of the former action upon the same note ; and if the plaintiff was successful in the first instance against the indorser, the indorsee had precisely the same right to sue the maker and recover of him the cost of the original action. The interest of the maker, therefore, was perfectly balanced, in which case Judge Colcock himself admitted he was a competent witness. Yet the witness was rejected by Judge

Colcock.  Upon a full consideration of the cases of Walton and Shelly, and Jordan and Laishbrooke, and the reasons upon which those cases rest, the court decide, that the payee in this case is a competent witness.  It rejects the authority of the case of Walton and Shelly on the following grounds:

1. Because the principle decided in that case was first decided to be law more than ten years after the period determined by the adopting act of this State.

2. Because the principle therein decided is not now law in England, and never was, except from the year 1786, to the year 1798.

3. Because the principle decided in that case is unsupported by any elementary treatise on the law of evidence.

4. Because it was evidently decided in subservience to the commercial interests of that country, to the injury of every other; thereby encouraging a spirit of favoritism at war with the genius of our constitution, and adverse to the tranquillity and harmony of our government.